The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:22-cv-01009-TL |
| Plaintiff, | **MOTION FOR LEAVE TO FILE AMICUS BRIEF** |
| v. | NOTED FOR:  March 3, 2023 |
| ISHAN WAHI, NIKHIL WAHI, AND SAMEER RAMANI, | |
| Defendants. | |

The Investor Choice Advocates Network ("ICAN") respectfully moves, pursuant to the Court's inherent authority, to file a brief as *amicus curiae* regarding whether the choice to regulate digital assets is a major question not delegated to the SEC through the term "investment contract."  Specifically, the brief focuses on whether the sufficiency of the current regulatory framework provides the SEC with the requisite authority to regulate digital assets.  A copy of the proposed brief is attached as Exhibit A to this Motion. Undersigned counsel has consulted with counsel for the SEC and defendants, all of whom have consented to the filing of ICAN's amicus brief.

## I.    DISTRICT COURTS HAVE AUTHORITY TO ACCEPT AMICUS BRIEFS

Federal district courts possess the inherent authority to accept *amicus* brief.  *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) ("[D]istrict courts

MOTION FOR LEAVE TO FILE
AMICUS BRIEF – 2:22-CV-01009-TL

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

1  possess the inherent authority to appoint 'friends of the court' to assist in their proceedings.");

2  *Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008).  The role of *amici* is to

3  assist the court "in cases of general public interest by making suggestions to the court, by

4  providing supplementary assistance to existing counsel, and by insuring a complete and plenary

5  presentation of difficult issues so that the court may reach a proper decision."  *Newark Branch,*

6  *N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 808 (3d Cir. 1991).  This authority supports

7  the Court's exercise of its discretion to accept ICAN's *amicus* brief.

8        **II.**    **THE PROPOSED BRIEF PROVIDES SUPPLEMENTAL ANALYSIS OF THE MAJOR QUESTIONS DOCTRINE AND THE INSUFFICIENCY OF**

9                  **THE SEC'S EXISTING REGULATORY FRAMEWORK**

10        ICAN has reviewed the briefs filed to date in this case to avoid unnecessary duplication

11  of the parties' arguments.  This case challenges whether certain digital assets at issue qualify as

12  "securities" under the current securities laws and questions the SEC's authority to regulate these

13  digital assets.

14        ICAN is a nonprofit, public interest organization focused on expanding access to markets

15  by underrepresented investors and entrepreneurs. See https://www.icanlaw.org/.  ICAN actively

16  represents the interests of market participants, and therefore has a significant interest in assisting

17  this Court's determination of the scope of the regulatory power of the SEC and in this Court's

18  interpretation and application of the Securities Act of 1933 to digital assets.  Further, the impact

19  of the Court's decision in this case will not be isolated to the named defendants alone; instead,

20  the questions presented here will have far-reaching implications on countless individuals and

21  organizations that participate in the digital assets industry.  Allowing ICAN to provide briefing

22  on the relevant legal issues would ensure the Court is provided with ICAN's unique and

23  meaningful perspective, and that the Court will be presented with the views of third-party

24  interests that may be affected by its decision in this case.  ICAN's unique perspective can assist

25

26

MOTION FOR LEAVE TO FILE
AMICUS BRIEF – 2:22-CV-01009-TL

2

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

the Court in insuring a complete and plenary presentation of complex issues so that the court may reach a proper decision.

### III.    COMPLIANCE WITH RULE 29(a) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

Although there is no rule of this Court governing the filing of amicus briefs, ICAN has adhered to Rule 29(a) of the Federal Rules of Appellate Procedure in connection with this motion and accompanying amicus brief. There are no facts relating to ICAN, or its proposed amicus brief, that would result in the disqualification of The Honorable Tana Lin from the case. FRAP 29(a)(2).  ICAN's interest in this case, and the reasons why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case, are set forth above and in the brief itself.  FRAP 29(a)(3).  The length and formatting of the brief complies with FRAP 29(a)(4).  In addition, regarding FRAP 29(a)(4)(E): (i) a party's counsel did not author the brief in whole or in part; (ii) a party or a party's counsel has not contributed money intended to fund preparing or submitting the brief; and (iii) no person—other than the amicus curiae, its members, or its counsel— has contributed money intended to fund preparing or submitting the brief.

I certify that this memorandum contains 784 words, in compliance with the Local Civil Rules.

Respectfully submitted,

DATED:   February 13, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Jeffrey B. Coopersmith*

Jeffrey B. Coopersmith (WA #30954)
jcoopersmith@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
(206) 839-4300

Stephen Cazares (CA #201864)
 *(Pro hac vice pending)*
scazares@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
(213) 612-2499

MOTION FOR LEAVE TO FILE
AMICUS BRIEF – 2:22-CV-01009-TL

3

Orrick Herrington & Sutcliffe LLP
401 Union Street, Suite 3300
Seattle, Washington 98101
tel+1-206-839-4300

# EXHIBIT A

The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:22-cv-01009-TL |
| Plaintiff, | **BRIEF FOR AMICUS CURIAE INVESTOR CHOICE ADVOCATES NETWORK IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| ISHAN WAHI, NIKHIL WAHI, AND SAMEER RAMANI, | |
| Defendants. | |

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

1

**CORPORATE DISCLOSURE STATEMENT**

2     *Amicus Curiae* submits the following corporate disclosure statement: Investor Choice

3 Advocates Network ("ICAN") is a nonprofit, public interest organization working to expand

4 access to markets by underrepresented investors and entrepreneurs.[1]   ICAN has no parent

5 corporation, and no publicly held company has a 10% or greater ownership in ICAN.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

[1] Undersigned counsel has consulted with counsel for the SEC and defendants, all of whom have
consented to the filing of ICAN's amicus brief.  No party or party's counsel, and no person other
than ICAN and its counsel, authored this brief in whole or in part or contributed money intended
25 to fund preparing or submitting the brief.

26
AMICUS BRIEF                          PAUL HASTINGS LLP                  ORRICK, HERRINGTON &
Case No. 2:22-cv-01009        515 South Flower Street, 25th Floor            SUTCLIFFE LLP
                                      Los Angeles, CA 90071             401 Union Street, Suite 3300
                                      Telephone: (213) 683-6000             Seattle, WA 98101
                                                                       Telephone: (206) 839-4300

ii

1

## <u>**TABLE OF CONTENTS**</u>

2

**Page**

3

I.      INTRODUCTION ........................................................................................... 1

II.     THE COURT SHOULD NOT STRETCH THE MEANING OF "INVESTMENT
CONTRACT" TO ALLOW THE SEC TO REGULATE AN ENTIRE INDUSTRY
WITHOUT UNAMBIGUOUS AND EXPLICIT AUTHORITY FROM CONGRESS,
WHICH IS ABSENT HERE ............................................................................ 2

      A.    The SEC's Attempt to Regulate Digital Assets Exceeds its Statutory Authority...... 3

      B.    Congress is Still Considering Various Options to Regulate Digital Assets............... 5

III.    EVEN IF THE SEC ALLEGES THE INTIAL TOKEN OFFERINGS WERE
INVESTMENT CONTRACTS UNDER *HOWEY*, THE COURT CANNOT
CONCLUDE THAT SECONDARY MARKET TRADING INVOLVES THE OFFER
OR SALE OF SECURITIES ........................................................................... 7

      A.    The *Howey* Test Applies to Each Transaction, Not Each Underlying Digital Asset. 7

      B.    A *Howey* Analysis Must be Performed at the Time of Each Offer or Sale. .............. 8

      C.    Secondary Market Token Transactions May Not be Securities Transactions. .......... 9

IV.    CONCLUSION............................................................................................ 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

iii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000)................................................................................................2, 5

*Gonzales v. Oregon*,
   546 U.S. 243 (2006)...................................................................................................2

*Hocking v. Dubois*,
   885 F.2d 1449 (9th Cir. 1989) ..................................................................................7

*MCI Telecomms. Corp. v. AT&T Co.*,
   512 U.S. 218 (1994)...................................................................................................2

*Nat'l Fed. Indep. Bus. v. Dep't Lab., Occupational Safety, & Health Admin.*,
   142 S. Ct. 661, 669 (2022) ........................................................................................3

*SEC v. Aqua-Sonic Products Corp.*,
   524 F. Supp. 866 (S.D.N.Y. 1981).............................................................................8

*SEC v. Telegram Grp. Inc.*,
   448 F. Supp. 3d 352 (S.D.N.Y. 2020)........................................................................8

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946)...........................................................................................*passim*

*Util. Air Regul. Grp. v. Env't Prot. Agency*,
   573 U.S. 302, 324 (2014)...........................................................................................4

*West Virginia v. Environmental Protection Agency*,
   142 S. Ct. 2587 (2022)........................................................................................3, 4, 5

*Whitman v. Am. Trucking Ass'ns.*,
   531 U.S. 457 (2001)...................................................................................................4

**Statutes**

15 U.S.C. § 77(b)(a)(1) ...................................................................................................4

Clean Air Act § 111(d) ...................................................................................................3

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

iv

Digital Commodities Consumer Protection Act of 2022 (S. 4760) ................................................6

Digital Commodity Exchange Act of 2022 (H.R. 7614) ..............................................................6

Lummis-Gillibrand Responsible Financial Innovation Act (S. 4356) ..........................................5

Securities Act of 1933..............................................................................................................4, 8

**Other Authorities**

Letter from Jay Clayton, Chairman, SEC, to Rep. Ted Budd (March 7, 2019),
    https://www.coincenter.org/app/uploads/2020/05/clayton-token-response.pdf .......................9

Memorandum, SEC, *Framework for "Investment Contract" Analysis of Digital
    Assets* (Apr. 3, 2019), https://www.sec.gov/corpfin/framework-investment-
    contract-analysis-digital-assets ..............................................................................................9

Statement of Caroline D. Pham, CFTC Comm'r on *SEC v. Wahi* (July 21, 2022),
    https://www.cftc.gov/PressRoom/SpeechesTestimony/phamstatement072122 ......................1

William Hinman, Director, Div. of Corp. Fin., SEC, Remarks at the Yahoo
    Finance All Markets Summit: Crypto, Digital Asset Transactions: When
    Howey Met Gary (Plastic) (June 14, 2018),
    https://www.sec.gov/news/speech/speech-hinman-061418.......................................................8

AMICUS BRIEF                         PAUL HASTINGS LLP                    ORRICK, HERRINGTON &
Case No. 2:22-cv-01009         515 South Flower Street, 25th Floor              SUTCLIFFE LLP
                                           Los Angeles, CA 90071              401 Union Street, Suite 3300
                                        Telephone: (213) 683-6000                 Seattle, WA 98101
                                                                              Telephone: (206) 839-4300

v

1

## STATEMENT OF INTEREST

2    Investor Choice Advocates Network ("ICAN") is a nonprofit organization that advocates

3  for expanding access to markets—including markets for digital assets—for underrepresented

4  investors and entrepreneurs who do not share the same access and market power as those with

5  more assets and resources.

6    *Amicus* has a significant interest in limiting the scope of the Securities and Exchange

7  Commission's (the "SEC" or "Commission") regulatory power to those functions authorized by

8  statute and permissible under the United States Constitution.  As an organization speaking on

9  behalf of underrepresented market participants, *amicus* also has a significant interest in ensuring

10  the SEC's power to regulate securities does not improperly hamper the ability of individuals and

11  organizations seeking to engage in the sort of digital asset transactions that Congress has not

12  elected to regulate.  The Court's possible expansive interpretation and application of the Securities

13  Act of 1933 ("Securities Act"), Securities Exchange Act of 1934 ("Exchange Act"), and other

14  federal securities laws to digital assets will have far-reaching consequences on the separation of

15  powers and on digital asset and blockchain innovation across the country.

16    The interest of *amicus* differs from that of Defendants Ishan Wahi, Nikhil Wahi, and

17  Sameer Ramani, who the SEC alleges violated the provisions of the federal securities laws.  As

18  stated above, *amicus* is a nonprofit organization who seeks to ensure that the SEC's power to

19  regulate securities does not improperly hamper the ability of individuals and organizations seeking

20  to engage in the sort of digital asset transactions that Congress has elected not to regulate.

21

22

23

24

25

26  AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

## I.    INTRODUCTION

The Securities and Exchange Commission's ("SEC" or "Commission") complaint rests on two fundamental assumptions.  First, the SEC assumes that the vague statutory term "investment contract" is sufficient statutory authorization for the Commission to assert jurisdiction over dozens of digital assets.  Second, the SEC assumes that because it has alleged the *initial distribution* of the digital assets at issue involved investment contracts (and were therefore securities offerings in the SEC's view), the digital assets *continued to be securities* at the time of the secondary market transactions that form the basis of the SEC's claims.  *Amicus* draws these two assumptions to the Court's attention because (1) the assumptions are unsupported, and (2) the SEC's position will have enormous impact, not just in this case and against the individual defendants, but more broadly on all holders of digital assets nationwide.

As to the first point, the SEC's jurisdiction is far from established.  Demonstrating the unsettled nature of the regulatory jurisdiction here, shortly after the SEC's filing of its complaint in this case, Commodities Futures Trading Commission Commissioner Caroline Pham issued a statement that read in part:

> The case *SEC v. Wahi* is a striking example of "regulation by enforcement."  The SEC complaint alleges that dozens of digital assets, including those that could be described as utility tokens and/or certain tokens relating to decentralized autonomous organizations (DAOs), are securities.

> The SEC's allegations could have broad implications beyond this single case, underscoring how critical and urgent it is that regulators work together.  Major questions are best addressed through a transparent process that engages the public to develop appropriate policy with expert input—through notice-and-comment rulemaking pursuant to the Administrative Procedure Act.  Regulatory clarity comes from being out in the open, not in the dark.

Statement of Caroline D. Pham, CFTC Comm'r, on *SEC v. Wahi* (July 21, 2022).[2]

---

[2] Available at https://www.cftc.gov/PressRoom/SpeechesTestimony/phamstatement072122.

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

1

1        As to the second point, although the SEC alleges that the initial token distributions

2  alleged in the Amendment Complaint are investment contracts under the *Howey* test, the court

3  cannot conclude from such allegations that secondary market trading involves securities

4  transactions.  *See* First Amended Complaint ("FAC"), (Dkt. #27) at ¶ 101.  Because facts can

5  change, determining whether a digital asset transaction on the secondary market amounts to an

6  offer or sale of a security necessitates a careful legal analysis.  Secondary market transactions

7  involving the tokens at issue in this case may or may not constitute investment contracts or

8  securities transactions.  The SEC simply assumes in its FAC that the secondary market

9  transactions are securities transactions because (the SEC alleges) the initial distribution of the

10  digital assets constituted investment contract securities offerings.  No basis exists, and certainly,

11  the SEC alleges no basis from which the Court can conclude that the transactions at issue in this

12  case are securities transactions.

## II.    THE COURT SHOULD NOT STRETCH THE MEANING OF "INVESTMENT CONTRACT" TO ALLOW THE SEC TO REGULATE AN ENTIRE INDUSTRY WITHOUT UNAMBIGUOUS AND EXPLICIT AUTHORITY FROM CONGRESS, WHICH IS ABSENT HERE

16        In specific instances, Congress has delegated regulatory authority to certain federal

17  agencies.  However, in what has become known as the "major questions doctrine," the Supreme

18  Court has held that when an agency seeks to use its delegated authority to regulate an issue of

19  major national significance, that agency's authority to do so must be supported by clear, and not

20  vague or ambiguous, statutory authorization.  *See*, *e.g.*, *MCI Telecomms. Corp. v. AT&T Co.*,

21  512 U.S. 218 (1994) (rejecting Federal Communication Commission's waiver of tariff

22  requirement); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) (rejecting Food

23  and Drug Administration's regulation of tobacco industry based on statutory authority over

24  "drugs" and "devices"); *Gonzales v. Oregon*, 546 U.S. 243 (2006) (rejecting Attorney General's

25  regulation of assisted suicide drugs under his statutory authority over controlled substances).

26

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

2

1    Most recently, in *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587,

2   2620 (2022), the Supreme Court ruled that section 111(d) of the Clean Air Act did not give the

3   Environmental Protection Agency ("EPA") broad authority to regulate certain greenhouse gas

4   emissions.  In his concurring opinion, Justice Gorsuch observed that "when agencies seek to

5   resolve major questions, they at least act with clear congressional authorization and do not

6   'exploit some gap, ambiguity, or doubtful expression in Congress's statutes to assume

7   responsibilities far beyond' those the people's representatives actually conferred on them."  *Id.* at

8   2620 (Gorsuch, J., concurring) (*citing Nat'l Fed. Indep. Bus. v. Dep't Lab, Occupational Safety,*

9   *& Health Admin.,* 142 S. Ct. 661, 669 (2022)) (internal quotations and citations omitted).  The

10  Court ultimately found that no such authorization existed under the Clean Air Act.  In

11  determining that the EPA's decision constituted a "major question" in *West Virginia*, the

12  Supreme Court observed that the EPA's decision would have "vast economic and political

13  significance" involving "billions of dollars of impact" and "representing a 'transformative

14  expansion in [its] regulatory authority' … that Congress had conspicuously and repeatedly

15  declined to enact itself."  *Id.* at 2604, 2610.  In describing the EPA's regulatory decision, the

16  Supreme Court could just as easily have been describing the SEC's attempt to expand its

17  authority over digital assets despite the vast economic and political significance such a decision

18  would have and in the absence of Congressional delegation to do so.

19          **A.  The SEC's Attempt to Regulate Digital Assets Exceeds its Statutory**
20              **Authority.**

21    In this case, the SEC treats the term "investment contract" as though it were infinitely

22  flexible and applicable to all manner of investments.  *See, e.g.*, FAC ¶ 12.  But, the statutory

23  source for the term "investment contract" gives no indication that Congress meant this term to be

24  a catch-all phrase to capture financial transactions unrelated to "any interest or instrument

25  commonly known as a 'security.'"  Indeed, "investment contract" is just one item on a very

26  AMICUS BRIEF                          PAUL HASTINGS LLP                  ORRICK, HERRINGTON &
    Case No. 2:22-cv-01009         515 South Flower Street, 25th Floor            SUTCLIFFE LLP
                                          Los Angeles, CA 90071         401 Union Street, Suite 3300
                                          Telephone: (213) 683-6000              Seattle, WA 98101
                                                                       Telephone: (206) 839-4300

specific list of investment vehicles that Congress set forth in the Securities Act to delineate one limit of the federal securities laws.  *See* 15 U.S.C. § 77(b)(a)(1).

As noted by the Supreme Court, Congress rarely grants regulatory authority through "modest words," "vague terms," or "subtle device[s]."  *Whitman v. Am. Trucking Ass'ns.*, 531 U.S. 457, 468 (2001).  Nor does it "typically use oblique or elliptical language to empower an agency to make a 'radical or fundamental change' to a statutory scheme."  *West Virginia*, 142 S. Ct. at 2609 (*citing MCI Telecomm. Corp. v. AT&T*, 512 U.S. 218, 229 (1994)).

In *West Virginia*, the EPA similarly relied upon a vague statutory term to establish authority for its actions.  The Supreme Court rejected the agency's reliance, finding that the phrase "system of emission reduction" was an "empty vessel" that could encompass "almost anything[.]"  *Id*. at 2614.  The Court also held that, under its precedents, the issue presented was a major question because the EPA "'claim[ed] to discover in a long-extant statute an unheralded power' representing a transformative expansion in [its] regulatory authority."  *Id.* at 2610 (*citing Util. Air Regul. Grp v. Env't Prot. Agency*, 573 U.S. 302, 324 (2014)).

Similarly, here, the term "investment contract" cannot be said to confer the type of authority the SEC wishes to yield.  The Securities Act does not define the term "investment contract."  Instead, the Supreme Court—not Congress—has laid out a four-part test (the "*Howey* test") for determining whether certain transactions or schemes qualify as investment contracts, which are in turn subject to regulation.  *See SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  To be sure, the *Howey* test is "flexible" and "capable of adaption to meet the countless and variable schemes derived by those who seek the use of money of others on the promise of profits."  *Id*. at 299.  But even the Supreme Court in 1946 surely was not suggesting that Congress intended the term "investment contract" to be a catch-all phrase designed to be applied to all instruments that, as discussed below, share isolated characteristics of currencies and commodities, among other

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

4

1    things.  The SEC nevertheless claims—as the EPA impermissibly did—to have discovered "an

2    unheralded power" which would vastly transform and expand its regulatory authority.

3         The Court should not permit the SEC to transform a general and vague term into one that

4    is so flexible it empowers the SEC to regulate an entire (and entirely new) industry.  Such

5    regulation involves a major question and exceeds the SEC's current statutory authority.

6         **B.  Congress is Still Considering Various Options to Regulate Digital**
           **Assets.**

7

8         The United States Congress has repeatedly considered regulation of digital assets through

9    proposed legislation.  In *West Virginia*, the Supreme Court acknowledged that "[a]gencies have

10   only those powers given to them by Congress," and "enabling legislation" is generally not an

11   "open book to which the agency [may] add pages and change the plot line."  *West Virginia*,

12   142 S. Ct. at 2609.  As Justice Gorsuch noted in his concurrence:

13        Permitting Congress to divest its legislative power to the Executive Branch would
          "dash [this] whole scheme."  *Department of Transportation v. Association of*
14        *American Railroads*, 575 U.S. 43, 61, 135 S.Ct. 1225, 191 L.Ed.2d 153 (2015)
          (Alito, J., concurring).  Legislation would risk becoming nothing more than the
15        will of the current President, or, worse yet, the will of unelected officials barely
          responsive to him. See S. Breyer, Making Our Democracy Work: A Judge's View
16        110 (2010).

17   *Id*. at 2618 (Gorsuch, J., concurring).  The Supreme Court has found it telling when Congress has

18   "considered and rejected" bills authorizing something akin to the agency's proposed course of

19   action.  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 144 (2000).

20        Congress has introduced several bills over the last four years that would have authorized

21   federal agencies—including, critically, agencies other than the SEC—to regulate digital assets.

22        First, the Lummis-Gillibrand Responsible Financial Innovation Act (S. 4356), introduced

23   on June 7, 2022, would make a distinction between digital assets that are either securities or

24   commodities by looking at the purpose of the asset, and provide the CFTC with primary

25   authority over most types of digital assets and digital asset activities.  Digital asset securities

26   AMICUS BRIEF                    PAUL HASTINGS LLP              ORRICK, HERRINGTON &
     Case No. 2:22-cv-01009         515 South Flower Street, 25th Floor      SUTCLIFFE LLP
                                    Los Angeles, CA 90071         401 Union Street, Suite 3300
                                    Telephone: (213) 683-6000     Seattle, WA 98101
                                                                  Telephone: (206) 839-4300

1 would remain primarily regulated by the SEC.  The bill would also permit digital asset trading

2 platforms to register with the CFTC as Digital Asset Exchanges and provide for safeguarding of

3 customer assets in the event of Digital Asset Exchange insolvency.  The bill would create

4 disclosure requirements on digital asset service providers that will ensure consumers understand

5 the products they are purchasing and create a structure for the taxation of digital assets.  The bill

6 had not left the Committee on Banking, Housing, and Urban Affairs.

7      Second, the Digital Commodities Consumer Protection Act of 2022 (S. 4760), introduced

8 on August 3, 2022, would provide the CFTC authority to regulate digital commodities.  The bill

9 had been referred to the Committee on Agriculture, Nutrition, and Forestry and has not left the

10 committee.

11      Third, the Digital Commodity Exchange Act of 2022 (H.R. 7614) was introduced on

12 April 28, 2022.  The bill would authorize the CFTC to register and regulate trading venues

13 offering spot or cash digital commodity markets as digital commodity exchanges.  The bill

14 would also provide the CFTC with exclusive jurisdiction over any agreement, contract, or

15 transaction involving a contract of sale of a digital commodity in interstate commerce and would

16 provide that each futures commission merchant hold customer money, assets, and property in a

17 manner to minimize the customer's risk of loss or unreasonable delay in the access to the money,

18 assets, and property of the customer.  The bill was referred to the Subcommittee on Commodity

19 Exchanges, Energy, and Credit and had not left the subcommittee.

20      The number of bills in committee during the 117th Congress—any of which can be

21 reintroduced to the 118th Congress—demonstrate that Congress is keenly interested in the area

22 of digital assets.  Until a consensus is reached, the SEC has no authority to fill what it apparently

23 perceives as a vacuum.

24

25

26 AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

III.    **EVEN IF THE SEC ALLEGES THE INTIAL TOKEN OFFERINGS WERE INVESTMENT CONTRACTS UNDER *HOWEY*, THE COURT CANNOT CONCLUDE THAT SECONDARY MARKET TRADING INVOLVES THE OFFER OR SALE OF SECURITIES**

A.    **The *Howey* Test Applies to Each Transaction, Not Each Underlying Digital Asset.**

A digital asset is not necessarily a security, but can be sold as part of an investment contract.  Only *transactions* that bundle certain rights and obligations are investment contracts. *SEC v. W.J. Howey Co.* and its progeny provide the framework for the analysis.  328 U.S. 293 (1946).  "In defining the term investment contract, *Howey* itself uses the terms 'contract, transaction or scheme,' leaving open the possibility that the security not be formed of one neat, tidy certificate, but a general 'scheme' of profit seeking activities."  *Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989) (internal citations omitted).

*Howey* itself illustrates this concept.  The investment contract in *Howey* involved the sale of real estate parcels in an orange grove, *coupled with* a service contract with the offeror, by which an affiliate would maintain lots, pick fruit, and market the harvest.  328 U.S. at 295-96.  In holding the arrangement constituted an "investment contract," the Supreme Court emphasized that rather than a traditional land conveyance, purchasers were offered "an opportunity to contribute money and to share in the profits of a large citrus fruit enterprise managed and partly owned by respondents."  *Id.* at 299.  The *Howey* investment contract was the *entire scheme*, not the oranges or the orange grove.

There is nothing about *Howey* and its progeny—nor any SEC rulemaking—that warrants treating digital assets categorically differently from orange groves.  In fact, Plaintiffs' former Director of the Division of Corporation Finance made clear that this distinction—scheme vs. asset—applies in the digital realm: "[T]he token—or coin—or whatever the digital information packet is called—all by itself is not a security, just as the orange groves in *Howey* were not."

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

7

William Hinman, Director, Div. of Corp. Fin., SEC, Remarks at the Yahoo Finance All Markets Summit: Crypto, Digital Asset Transactions: When Howey Met Gary (Plastic) (June 14, 2018).[3]

When talking about "investment contracts," as opposed to other items that are explicitly defined as securities, the analysis has to be different.  A stock, for example, is defined in the Securities Act of 1933 as a security, and will remain so in the initial offering and all secondary market transactions.  Not so with the oranges in *Howey*.  Oranges are not listed as a security in the Securities Act of 1933, but may transform into an "investment contract" pursuant to the surrounding circumstances of a transaction.  Oranges are not inherently securities, just as a digital asset is not inherently a security.  *Amicus* urges the Court to deploy the same analysis.

### B.  A *Howey* Analysis Must be Performed at the Time of Each Offer or Sale.

In order to evaluate the "economic realities" of a scheme or transaction, one must look at the facts and circumstances as they are, not as they were yesterday or years ago.  "*Howey* requires the Court to examine the series of understandings, transactions, and undertakings at the time they were made."  *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 368 (S.D.N.Y. 2020); *see also SEC v. Aqua-Sonic Products Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981) ("The enterprise and the described materials, by the very nature of the operation of the securities laws, must be examined as of the time that the transaction took place[.]").  The analysis requires subsequent offers or sales to be separately evaluated, taking into consideration any changes to the circumstance of each transaction in question.

The time-specific nature of the analysis means a token once sold as a part of an alleged security offering may well not be a security (or part of an investment contract) later.  Plaintiff

---

[3] Transcript *available at* https://www.sec.gov/news/speech/speech-hinman-061418.

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

8

1  agrees.[4]  On March 7, 2019, then SEC Chairman Jay Clayton stated that, "the analysis of whether

2  a digital asset is offered or sold as a security is not static and does not strictly inhere to the

3  instrument."  Letter from Jay Clayton, Chairman, SEC, to Rep. Ted Budd (March 7, 2019).[5]  He

4  further clarified that a digital asset "may be offered and sold initially as a security because it

5  meets the definition of an investment contract, but that designation may change over time if the

6  digital asset later is offered and sold in such a way that it will no longer meet that definition. …

7  [A] digital asset transaction may no longer represent an investment contract if, for example,

8  purchasers would no longer reasonably expect a person or group to carry out the essential

9  managerial or entrepreneurial efforts.  Under those circumstances, the digital asset may not

10  represent an investment contract under the *Howey* framework." *Id.*

### C. Secondary Market Token Transactions May Not be Securities Transactions.

13      Digital asset transactions by non-affiliates of token issuers may or may not be investment

14  contracts or securities transactions.  Precisely how and when a token ceases to be a security is

15  essential to the Court's analysis.  The Court should recognize that the facts and circumstances

16  around token transactions *can* change.  The SEC's Strategic Hub for Innovation and Financial

17  Technology issued an illustrative "Framework for 'Investment Contract' Analysis of Digital

18  Assets" (the "Framework") on April 3, 2019.[6]  Among other things, the Framework provides

19  non-exhaustive lists of factors to consider, "[i]n evaluating whether a digital asset ***previously***

20  sold as a security should be ***reevaluated*** at the time of later offers or sale."  *Id.* (emphasis added).

21

22  [4] While we recognize that SEC policy statements and guidelines are not law and do not constitute
23  binding precedent, the SEC should be bound to its own statements as a party to this action.
   [5] *Available at* https://www.coincenter.org/app/uploads/2020/05/clayton-token-response.pdf.
24  [6] Memorandum, SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3,
25  2019), *available at* https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-
   assets.

26  AMICUS BRIEF                    PAUL HASTINGS LLP              ORRICK, HERRINGTON &
    Case No. 2:22-cv-01009      515 South Flower Street, 25th Floor        SUTCLIFFE LLP
                                    Los Angeles, CA 90071         401 Union Street, Suite 3300
                                    Telephone: (213) 683-6000          Seattle, WA 98101
                                                              Telephone: (206) 839-4300

1   The facts and circumstances surrounding the tokens alleged to be securities may continue to

2   evolve.

3   **IV.      CONCLUSION**

4   For all the aforementioned reasons, the Court should grant Defendants' Motion to

5   Dismiss.

AMICUS BRIEF
Case No. 2:22-cv-01009

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000

ORRICK, HERRINGTON &
SUTCLIFFE LLP
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300

10

1    DATED:       February 13, 2023            ORRICK, HERRINGTON &
                                              SUTCLIFFE LLP
2

3                                             By: *s/Jeffrey B. Coopersmith*
                                                  Jeffrey B. Coopersmith (WA #30954)
4                                                 Stephen A. Cazares (CA #201864)
                                                    *(Pro hac vice pending)*
5                                                 401 Union Street, Suite 3300
                                                  Seattle, WA 98101
6                                                 Telephone: (206) 839-4300

7                                                 Nicolas Morgan (CA #166441)
                                                    *(Pro hac vice forthcoming)*
8                                                 PAUL HASTINGS LLLP
                                                  515 South Flower Street
9                                                 Twenty-Fifth Floor
                                                  Los Angeles, CA 90071
10                                                Telephone: (213) 683-6000
                                                  Facsimile: (213) 627-0705
11                                                nicolasmorgan@paulhastings.com

12                                                Eric Sibbitt (CA #192413)
                                                    *(Pro hac vice forthcoming)*
13                                                Lisa Rubin (CA #317355)
                                                    *(Pro hac vice forthcoming)*
14                                                Anuva Ganapathi (CA #339930)
                                                    *(Pro hac vice forthcoming)*
15                                                PAUL HASTINGS LLP
                                                  101 California Street, 48th Floor
16                                                San Francisco, CA 94111
                                                  Telephone: (415) 856-7027
17                                                Facsimile: (415) 856-7100
                                                  ericsibbitt@paulhastings.com
18                                                lisarubin@paulhastings.com
                                                  anuvaganapathi@paulhastings.com
19

20

21

22

23

24

25

26   AMICUS BRIEF                  PAUL HASTINGS LLP              ORRICK, HERRINGTON &
     Case No. 2:22-cv-01009    515 South Flower Street, 25th Floor        SUTCLIFFE LLP
                                  Los Angeles, CA 90071          401 Union Street, Suite 3300
                                  Telephone: (213) 683-6000             Seattle, WA 98101
                                                                 Telephone: (206) 839-4300