JUDGE TANA LIN

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>v.<br><br>ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI,<br><br>                Defendants. | Civil Action No. 2:22-cv-1009<br><br>DECLARATION OF MICHAEL BRENNAN |

I, Michael Brennan, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.    I am over 18 years of age and employed as an Assistant Director by the United States Securities and Exchange Commission ("Commission" or "SEC") in the Division of Enforcement, at the SEC's headquarters office in Washington, D.C. I am currently a member in good standing of the District of Columbia Bar. I make this Declaration in support of the SEC's Motion for Default Judgment against Defendant Sameer Ramani.

2.    The facts set forth herein are based upon my personal knowledge, my discussions with other Commission staff members, and information contained in the files of the Commission.

3.    Prior to filing the Complaint in this matter, the SEC conducted an investigation that included, among other things, gathering publicly available documents and obtaining documents from relevant third parties. Some records were gathered voluntarily, while others were produced in response to subpoenas.

- 1 -

Declaration of Michael Brennan
SEC v. Wahi, et al.
Case No. 22-cv-01009

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-6864

# FACTS SUPPORTING DISGORGEMENT AND PREJUDGMENT INTEREST CALCULATIONS

**I.    Methodology for Calculating Disgorgement**

4.    To determine Ramani's ill-gotten gains resulting from his violations of the securities laws, I identified a "reasonable approximation of illicit trading proceeds causally connected to the violation." *SEC v. Pithapurwala*, No. CV 21-9384, 2022 WL 2200400, at *2 (C.D. Cal. June 13, 2022). My calculation of Ramani's profits includes both realized and unrealized gains. A defendant who engages in insider trading must disgorge the difference between the trade price and the price of the stock "a reasonable time after public dissemination of the insider information." *SEC v. MacDonald*, 699 F.2d 47, 554-55 (1st Cir. 1983). As described below, my calculation of Ramani's profits is based on a *MacDonald* analysis relying on (1) the sales price of any crypto asset securities that he sold on the day of Coinbase's listing announcement or the following day, compared to the price at which he purchased those crypto asset securities, and, (2) for any crypto asset securities he held on to, the closing price on the day after Coinbase's listing announcement, as listed on CoinMarketCap, compared to the price at which he purchased those securities. CoinMarketCap is a website that provides data concerning crypto assets, including their historical prices.

5.    Ramani acquired crypto asset securities about which Ramani had non-public information related to a future listing on Coinbase ("NPI Crypto") by causing blockchain addresses he controlled, directly or indirectly, to trade certain crypto asset securities (chiefly ETH, USDT, and USDC) for the NPI Crypto. For ease of description, I will refer to these transactions as "purchases."

6.    Similarly, Ramani disposed of NPI Crypto by causing the blockchain address in which those assets were held to trade the NPI Crypto for another crypto asset security (chiefly ETH and USDC). For ease of description, I will refer to these transactions as "sales."

- 2 -

Declaration of Michael Brennan  
SEC v. Wahi, et al.  
Case No. 22-cv-01009

Securities and Exchange Commission  
100 F Street NE  
Washington, DC 20549  
Telephone: (202) 551-6864

7.       To determine Ramani's purchase price of NPI Crypto, I used the value of the crypto asset security (typically ETH, USDT, or USDC) that was traded for the NPI Crypto at the time of the trade, according to the values provided by Etherscan.  Etherscan is an analytics platform that provides details about, among other things, finalized transactions using Ethereum.  For transactions in which I used Etherscan data, I used Etherscan's value for "Estimated Value on Day of Txn" for the value of the relevant crypto asset security that was traded for the NPI Crypto.

8.       To determine Ramani's "sale" price of NPI Crypto, I used the following methodology:

   a. If Ramani sold on the date of the Coinbase listing announcement or the next calendar day, I used the value of the traded-for asset, using Etherscan data at the time of the trade as the sales price of the NPI Crypto.

   b. For any NPI Crypto that Ramani held more than one day after a Coinbase listing announcement, I used the "closing price" of the asset (as stated by CoinMarketCap) multiplied by the number of NPI Crypto tokens held more than one calendar day after a Coinbase listing announcement.

9.       To calculate Ramani's ill-gotten gains, I subtracted the purchase price from the sales price for the transactions in the seven NPI Crypto alleged in the Amended Complaint.

**II.      Disgorgement Calculation**

10.      The Amended Complaint (Dkt. No. 27) alleges that Ramani frequently used nominee accounts and anonymous wallets both to conduct the insider trading and to transfer and receive illicit proceeds.  To identify Ramani's illicit trades, analysts at the SEC conducted digital asset tracing to identify blockchain addresses that made illicit trades in the NPI Crypto and had directly or indirectly sent funds to, or received funds from, known Ramani wallets or accounts.

11.      For example, on May 20, 2021, Ramani sent 13,308 USDC from his Coinbase account to a Binance account purportedly held by a third party.  On June 7, 2021, that Binance account sent ETH to an unhosted address [0x2a1f], which traded ETH for AMP.  An unhosted, or

- 3 -

Declaration of Michael Brennan
SEC v. Wahi, et al.
Case No. 22-cv-01009

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-6864

1   "cold," wallet is a self-custodied wallet that is not held on any crypto asset trading platform.  On
2   June 10, 2021, that unhosted address [0x2a1f] traded AMP for ETH, and sent the ETH proceeds to
3   Ramani's Binance account on June 10 and June 11, 2021.

4       12.     Using the methodology described herein, I calculated Ramani's approximate profits
5   arising from his transactions related to six crypto asset securities, as reflected in the following chart:

| Crypto Asset Security | Approximate Profit |
|---|---|
| AMP | $22,187.16 |
| DDX | $37,035.31 |
| RGT | $22,152.74 |
| XYO | $658,155.44 |
| KROM | $60,281.50 |
| DFX | $17,790.80 |
| **Total** | **$817,602** |

13.     Therefore, I have approximated that Ramani's ill-gotten gains as a result of the scheme alleged in the Amended Complaint were $817,602.

**III.    Prejudgment Interest Calculation**

14.     I have calculated prejudgment interest based on disgorgement of $817,602. Attached as Exhibit A is a true and correct copy of the prejudgment interest report the SEC staff prepared.  This report reflects prejudgment interest of $79,570 from May 1, 2022 – the first day of the month after Ramani's most recent purchases of NPI Crypto, as alleged in the Amended Complaint – until October 31, 2023, the last day of the month in which the Clerk of the Court entered default against Defendant Ramani (Dkt. No. 115).

Executed on January 17, 2024.

/s/ *Michael Brennan*
Michael Brennan
Attorney for Plaintiff
Securities and Exchange Commission

- 4 -

Declaration of Michael Brennan
SEC v. Wahi, et al.
Case No. 22-cv-01009

Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Telephone: (202) 551-6864

# Exhibit A



## U.S. Securities and Exchange Commission
## Prejudgment Interest Report

### Ramani PJI 4.11.22 - 11.2.23

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| **Violation Amount** | | | | **$817,602.00** |
| 05/01/2022-06/30/2022 | 4.00% | 0.67% | $5,465.61 | $823,067.61 |
| 07/01/2022-09/30/2022 | 5.00% | 1.26% | $10,372.91 | $833,440.52 |
| 10/01/2022-12/31/2022 | 6.00% | 1.51% | $12,604.36 | $846,044.88 |
| 01/01/2023-03/31/2023 | 7.00% | 1.73% | $14,602.97 | $860,647.85 |
| 04/01/2023-06/30/2023 | 7.00% | 1.75% | $15,020.07 | $875,667.92 |
| 07/01/2023-09/30/2023 | 7.00% | 1.76% | $15,450.14 | $891,118.06 |
| 10/01/2023-10/31/2023 | 8.00% | 0.68% | $6,054.72 | $897,172.78 |

| **Prejudgment Violation Range** | | | **Quarter Interest Total** | **Prejudgment Total** |
|---|---|---|---|---|
| 05/01/2022-10/31/2023 | | | $79,570.78 | $897,172.78 |